**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ALICE ANN FRIENDS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 06-1762 (ESH)** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant.[1] | ) | |
| | ) | |

<u>**NOTICE OF FILING AMENDED REPLY IN FURTHER SUPPORT OF DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
MOTION FOR DISCOVERY**</u>

_____Defendant, Michael J. Astrue, hereby files notice of filing his amended Reply in Further

Support of his Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for

Discovery.  This amended pleading is being filed solely to correct an erroneous assertion in

footnote 18, appearing on page 24.  The undersigned counsel erroneously filed a prior version of

the document containing the incorrect footnote.  In addition, a new proposed Order, naming

Michael J. Astrue in the caption has been attached.  No other changes have been made to the

pleading.

---

[1]Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Michael J. Astrue has been
automatically substituted as the proper defendant in this case.  <u>See</u> Fed. R. Civ. P. 25(d)(1).  Mr.
Astrue was sworn in as the Commissioner of the Social Security Administration on or about
February 1, 2007.

Respectfully submitted,

_____/s/ Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/ Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


_____/s/ Michelle N. Johnson_____
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ALICE ANN FRIENDS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 06-1762 (ESH)** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant.[1] | ) | |
| | ) | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF HIS CROSS-MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR
DISCOVERY**

Defendant, Michael J. Astrue, Commissioner of the Social Security Administration

("SSA" or "the Agency") hereby files his reply to Plaintiff's opposition to Defendant's cross-

motion for summary judgment and his opposition to Plaintiff's motion for discovery.

In her opposition to Defendant's motion for summary judgment, Plaintiff does not

substantively refute many of Defendant's arguments. Rather, she misconstrues certain of

Defendant's arguments, makes irrelevant arguments, and makes conclusory statements that she

believes will preclude the Court from awarding Defendant summary judgment. In fact, as to

both counts I and II, Defendant is entitled to summary judgment because Plaintiff has failed to

establish that she was otherwise qualified under the Rehabilitation Act. Furthermore, pertaining

to count I, summary judgment is warranted because the accommodation Plaintiff sought would

---

[1]Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Michael J. Astrue has been automatically substituted as the proper defendant in this case. See Fed. R. Civ. P. 25(d)(1). Mr. Astrue was sworn in as the Commissioner of the Social Security Administration on or about February 1, 2007.

not have enabled Plaintiff to perform her job and this accommodation would have posed an undue hardship for Defendant.  Regarding count II, despite Plaintiff's attempts to dodge the summary judgment bullet by raising purported issues of fact, the reality is that the discovery Plaintiff seeks would not alter the Court's determination that she is not otherwise qualified and thus entitled to protection under the Rehabilitation Act.  And, in any event, none of the evidence Plaintiff submits establishes that Defendant's legitimate justification for its actions is pretextual. Nor does Plaintiff even address the substance of Defendant's argument that she cannot establish a constructive discharge claim as a matter of law.  For these reasons, summary judgment in Defendant's favor is warranted as to both counts of the Complaint.

## ARGUMENT

**I.     DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT BECAUSE HE DID NOT FAIL TO ACCOMMODATE PLAINTIFF IN VIOLATION OF THE REHABILITATION ACT.**

In his Opposition to Plaintiff's Motion for Partial Summary Judgment and his Cross-Motion for Summary Judgment ("Def.'s Mot."), Defendant made several arguments in support of his request for summary judgment on count I of Plaintiff's complaint.[2]  Plaintiff does not directly address many of those arguments. [3]

---

[2]Notably, Plaintiff did not dispute Defendant's contention that her arguments in support of summary judgment focused exclusively on her request for a full-time interpreter.  See Def.'s Mem. at 19 n.5.  The Court should therefore summarily dismiss any claims regarding accommodations other than Plaintiff's request for a full-time interpreter.  See, e.g., Complaint ¶ 10.

[3]In light of Plaintiff's arguments in opposition to Defendant's argument that Plaintiff failed to exhaust her administrative remedies regarding her request for a full-time interpreter, Defendant is withdrawing this argument.  Although Defendant does not contend that Plaintiff's unsworn statement made in an email (see Def.'s Mot., Ex. 15) regarding the date on which she received the denial of her request for an accommodation was definitive, in light of Plaintiff's

Rather, Plaintiff attempts to divert the Court's attention from the merits of Defendant's arguments by speculating as to why Defendant believed Plaintiff did not need an interpreter, which according to her was – (1) because she had stated she could read lips very well, and (2) because Defendant believed the applicable position description was drafted in such a manner as to preclude a deaf employee who had to rely on an ASL interpreter for claimant interviews from being qualified for the position. Plaintiff's Memorandum in Opposition to Defendant's Cross-Motion for Summary Judgment and Plaintiff's Reply to Defendant's Opposition to Motion for Summary Judgment ("Pl.'s Reply") at 11. Plaintiff fails to explain how these two facts refute Defendant's legal argument that Plaintiff was not entitled to the accommodation she sought because she was not "otherwise qualified" within the meaning of the Rehabilitation Act; because the accommodation would not have enabled her to perform her job; and because the accommodation would have placed an undue hardship on the Agency. (Def.'s Mot. at 14-20). To the extent Plaintiff does address the substance of Defendant's arguments, her arguments do not alter Defendant's entitlement to summary judgment on this count of the Complaint.

---

subsequently submitted affidavit (see Pl.'s Reply, Ex. 1), and the fact that the Agency cannot, at this time, dispute that affidavit, Defendant will not contest Plaintiff's assertion regarding the date she received the denial of her request for a full-time interpreter. Furthermore, as it pertains to Plaintiff's contact with an EEO counselor, while even Plaintiff admits that she did not actually speak to an EEO counselor until June 15, Pl.'s Opp'n at 10, the exhibit submitted by Plaintiff indicates that the EEO counselor treated Plaintiff's June 8 contact with the Office of Civil Rights and Equal Opportunity as the date of initial EEO contact. However, despite Plaintiff's inference to the contrary, this page of the document was inadvertently omitted from the materials counsel reviewed and submitted, and was not meant in any way to mislead the Court.

**A.      Plaintiff Was Not "Otherwise Qualified" Under the Rehabilitation Act Because She Could Not Perform the Duties of the Position With or Without a Reasonable Accommodation.**

Plaintiff's counsel either completely misunderstands or purposely misconstrues Defendant's argument that Plaintiff was not "otherwise qualified" and thus not entitled to any accommodation under the Rehabilitation Act, 29 U.S.C. § 791, et seq.  (Def.'s Mot. at 16-17). Indeed, Plaintiff devotes several pages of her opposition to this issue, wherein she construes Defendant's argument as being that Plaintiff's probationary status[4] rendered her ineligible to receive the accommodation she requested.  (Pl.'s Reply at 13; 20-23); see id. at 20 ("The only argument defendant attempts to support is a post-hoc rationalization of counsel according to which no disabled employee is entitled to any accommodation until he or she successfully completes whatever probationary period the employer imposes.").  Defendant makes no such argument.[5]

Plaintiff's complete misunderstanding of Defendant's argument is puzzling, as the argument is directly premised on the requirements of the Rehabilitation Act, which require that Plaintiff establish that she was "otherwise qualified" to perform her position and thus was entitled to an accommodation.  See 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination . .

---

[4]Notably, it appears that Plaintiff no longer contends that her employment was subject to a one, versus two year, probationary period.  Compare Pl.'s Mem. at 3 with Pl.'s Opp'n at 21.

[5]Indeed, Plaintiff's complete failure to comprehend Defendant's argument on this point is further evidenced by footnote 6 of her reply, wherein she contends that "another way" to interpret defendant's argument is that new employees, while entitled to a reasonable accommodation, do not have standing to enforce that right unless they successfully complete their probationary period.  Pl.'s Reply at 23-24 n.6.  Plaintiff concludes that this "does not appear to be defendant's actual theory."  Id. at 24 n.6.

. . .") (emphasis added).  See also 42 U.S.C.§ 12112(a) & 12112(b)(5)(A) ("No covered entity

shall discriminate against a qualified individual with a disability . . ." by "not making reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability . . . .") (emphasis added).[6]  See also Gilbert v. Frank, 949 F.2d 637, 640 (2d Cir.

1991) ("Only persons 'who are both handicapped and otherwise qualified are eligible for relief'

under the [Rehabilitation] Act.") (citation omitted).  Thus, it is part of Plaintiff's own prima facie

case to establish that she was "otherwise qualified" for the position.

        As Defendant previously argued, Plaintiff cannot establish this element.  To establish that

she was "otherwise qualified" Plaintiff is required to "show that she . . . can perform the essential

functions of the job in spite of the handicap either (a) with no need for accommodation, or (b)

with a reasonable accommodation."  Gilbert, 949 F.2d at 642 (emphasis added).  She has shown

neither here.

## 1.      Plaintiff Was Not Otherwise Qualified for the Position Without an Accommodation.

        The parties both agree that interviewing claimants was one of the essential functions of

the Social Insurance Specialist/Claims Representative position.  See Defendant's Statement of

Material Facts as to Which There is no Genuine Issue ("Def.'s Stmt.") ¶ 4; Plaintiff's Statement

of Genuine Issues in Response to Defendant's Cross-Motion for Summary Judgment ("Pl.'s

Opp'n Stmt.") ¶ 4; Plaintiff's Statement of Material Facts in Support of Her Motion for Partial

Summary Judgment ("Pl.'s Stmt.") ¶ 16.  In addition, both parties agree that another essential

function of the position was that Plaintiff be able to adjudicate claims for benefits and determine

---

        [6]The standards applicable to the Americans with Disabilities Act ("ADA") are applicable
in determining claims of discrimination under the Rehabilitation Act.  29 U.S.C. § 794(d).

claimants' eligibility for programs administered by the Agency.  (Def.'s Stmt. ¶ 4; Pl.'s Opp'n

Stmt. ¶ 4).  And, interestingly, both parties agree that Plaintiff could not perform these functions:

> Ms. Friends could not in fact comprehend what claimants told
> her sufficiently well to be able to efficiently handle their claims
> without mistakes.  Her constant fear that she was not getting all
> the information correctly interfered with her ability to remedy and
> apply what she had been taught about handling claims.

Pl.'s Stmt. ¶ 23.[7]  See also id. ¶ 31 ("Ms. Friends could not communicate sufficiently well with

speaking claimants to perform the interview function of her position.").  Therefore, the fact that

Plaintiff was not qualified for the position absent an accommodation has been established.

**2.     The Accommodation Plaintiff Requested Would Not Have Enabled
Her to Perform the Essential Functions of the Position.**

The issue thus becomes whether Plaintiff would have been able to perform her position

with the provision of a full-time ASL interpreter.  As Defendant previously argued, Def.'s Mot.

at 17, even with the provision of an ASL interpreter, Plaintiff would not have been able to

adjudicate claims for benefits, as required by her position.  Plaintiff apparently agrees with this

proposition.  See Pl.'s Reply at 16-17 ("Providing Ms. Friends an accommodation sufficient to

allow her to interview claimants, in the sense of being able to know what their responses to her

questions were, would not guarantee that Ms. Friends could then successfully apply Title 16

policy, or even that she would understand the implications of what was said.").  Where the

parties differ, however, is whether, in light of this fact, Plaintiff was still entitled to the

---

[7]Plaintiff expresses confusion regarding Defendant's response to this statement of fact in which Defendant contended that this statement was not material "because Plaintiff's subjective feelings and beliefs are not proper for consideration on summary judgment."  (Pl.'s Reply at 15 n.4).  However, Plaintiff's subjective "fears" are absolutely immaterial to the determination of whether she was qualified for the position under the Rehabilitation Act.

accommodation. Defendant contends that she was not and, in light of this fact, the accommodation requested was not reasonable.

On this point, <u>Chinchillo v. Powell</u>, 236 F. Supp. 2d 18 (D.D.C. 2003) is instructive. The court in <u>Chinchillo</u> held that in light of evidence that providing the employee the accommodation he requested would not have "allowed him to make decisions more effectively, to gain initiative, or to complete simple tasks such as producing memoranda within a reasonable time. . . ." the accommodation requested was not reasonable. <u>Id.</u> at 25. Thus, "[b]ecause there was no reasonable assurance that plaintiff's performance was likely to improve – immediately or in the distant future – even with the accommodation of time off for treatment and recovery, defendant was not required to provide such an accommodation." <u>Id.</u>

Similarly here, the parties both agree that providing Plaintiff with a full-time interpreter would not have cured her inability to successfully apply Title 16 policy and adjudicate claims for benefits, an essential function of her job. While Plaintiff, in her brief, summarizes the facts and holding in <u>Chinchillo</u>, she does not even attempt to distinguish this holding from the facts of this case. Pl.'s Reply at 22-23. And notably, she does not cite any binding authority for the proposition that an accommodation is reasonable if it is necessary for the performance of <u>one</u> of several essential functions of a position, even if it will not ensure successful performance of the position as a whole. <u>Id.</u> at 16-17. Under Plaintiff's theory, an employer would be required to accommodate an employee, no matter how poor her performance otherwise, so long as the accommodation requested would enable her to perform some aspect of the position. This is not the law. <u>See, e.g.</u>, <u>Clayborne v. Potter</u>, 448 F. Supp. 2d 185, 189 (D.D.C. 2006) ("An individual who cannot perform the essential duties of her job, even with an accommodation, is not

'qualified' under the statute." ) (citing <u>Chinchillo</u>, 236 F. Supp. 2d at 24); <u>Adrain v. Alexander</u>, 792 F. Supp. 124, 129 (D.D.C. 1992) ("The agency cannot afford and is not required to hire a full-time assistant for every handicapped employee regardless of the employee's level of productivity."). <u>See also</u> <u>Bennett v. Henderson</u>, 15 F. Supp. 2d 1097, 1110 (D. Kan. 1998) ("When requested accommodations do not permit the plaintiff to perform <u>all</u> essential functions of his or her . . . position, then he or she is not otherwise qualified for that position.") (citations omitted) (emphasis added).

Furthermore, as it concerns the interview function of the position, which both parties also agree was an essential function of Plaintiff's position, it was not a reasonable accommodation to suggest that Defendant hire someone else (i.e., an ASL interpreter) to communicate with claimants in lieu of Plaintiff. <u>See, e.g.</u>, <u>Gilbert</u>, 949 F.2d at 644 (holding that suggestion that certain essential functions of position could be waived for plaintiff or performed by co-workers were "not . . . suggestion[s] for reasonable accommodation since the tasks were essential functions of the job."). Therefore, <u>because</u> provision of the accommodation she sought would not have rendered Plaintiff "otherwise qualified" to perform her job duties, this accommodation was not reasonable. <u>See, e.g.</u>, <u>Dillbeck v. Huntington Nat'l Bank</u>, No. Civ.A. 03-0689, 2005 WL 1266690, at *5 (S.D. Ohio May 26, 2005) (granting summary judgment to employer "because plaintiff cannot satisfy the second element of her [ADA] claim, that she is an otherwise qualified individual. Thus defendant had no legal obligation to provide reasonable accommodations.") (citations omitted); <u>Adrain</u>, 792 F. Supp. at 127 (employer did not violate the Rehabilitation Act by denying employee's request for a full-time writer/assistant where this accommodation "would not have cured plaintiff's inadequate performance."). <u>See also</u> Def.'s Mot. at 17-18.

**B.    Defendant has Demonstrated that the Requested Accommodation Would have Posed an Undue Hardship for the Agency.**

In response to Defendant's argument that the provision of a full-time ASL interpreter to enable Plaintiff to communicate with claimants would be an "undue hardship," (Def.'s Mot. at 19-20), Plaintiff contends that Defendant has failed to adequately substantiate its argument. (Pl.'s Reply at 17-20).  According to Plaintiff, because Defendant has not provided evidence regarding how much the requested accommodation would cost, and what resources were available to cover the cost, Defendant has failed to adequately support this argument.  (Id.). Plaintiff's arguments are lacking in merit.

Notably, Plaintiff cites no binding authority for the proposition that Defendant must provide cost and resource data for the reasonable accommodation Plaintiff sought.  And, in fact, monetary considerations are not the only way by which a Defendant can demonstrate that an accommodation would pose an undue hardship.  Pursuant to the Equal Employment Opportunity Regulations ("EEOC") Plaintiff relies upon, an "undue hardship" with respect to an accommodation is defined as "significant difficulty or expense incurred by a covered entity . . . ."  29 C.F.R. § 1630.2(p)(1) (emphasis added).  And, while Plaintiff cites to a portion of the EEOC regulations regarding the factors to be considered in determining whether an employer has shown an accommodation would pose an undue hardship, she does not provide the full list of factors to the Court.[8]  Pursuant to 29 C.F.R. section 1630.2(p)(2), factors the court may[9] consider

_____

[8]While Plaintiff cites to 29 C.F.R. 1613.704(c), the current regulations can be found at 29 C.F.R. § 1630.2(p)(1).  Compare Pl.'s Reply at 18 with Def.'s Mot. at 19.

[9]Plaintiff also fails to mention that the case she cites noted that these regulations are not binding but are "[a]n alternative, but related source of authority . . . ."  Barth v. Gelb, 2 F.3d 1180, 1184 (D.C. Cir. 1993).

in determining whether an accommodation would pose an undue hardship on a covered entity

include:

> (I)     The nature and net cost of the accommodation . . . .
>
> (ii)    The overall financial resources of the facility . . . the
>         number of persons employed . . . and the effect on expenses and
>         resources;
>
> (iii)   The overall financial resources of the covered entity, the overall
>         size of the business of the covered entity . . . .
>
> (iv)    The type of operation or operations of the covered entity . . . .
>         including the composition, structure and functions of the
>         workforce . . . and
>
> (v)     The impact of the accommodation upon the operation of the
>         facility, including the impact on the ability of other employees
>         to perform their duties and the impact on the facility's ability
>         to conduct business.

Indeed, it was these last two factors, not the monetary costs or the expenditure of

resources, that the Court in Barth v. Gelb, 2 F.3d 1180, 1184 (D.C. Cir. 1993), the case cited by

Plaintiff, found dispositive in concluding that the employer had sufficiently established its undue

hardship defense.  The employee in Barth suffered "from an advanced and degenerative form of

diabetes requiring the care of a skilled endocrinologist to control the diabetes, plus an array of

other specialists . . . ."  Id. at 1182.  Plaintiff applied for admittance to his employer's permanent

foreign service, which provided staffing for engineering positions at the employer's overseas

radio relay stations.  Id.  In refusing to accept plaintiff into the foreign service, the employer

cited as the sole reason the plaintiff's diabetic condition and how his condition would negatively

impact the employer's operations.  Id.  Notably, as a result of the employer's "thin staffing" that

was used at these posts, the employer concluded that hiring the plaintiff would unfairly affect

other employees' morale.  Id.  Plaintiff contended that he could be accommodated by being

assigned "to one of three or four 'non-hardship' posts in the [employer's] radio relay system[,]"

where he could have access to the medical care he would need.  Id. at 1188.  In rejecting the

plaintiff's argument, the district court accepted the employer's proffered undue hardship defense

and concluded that, in light of the employer's "thin staffing" requirements, which required

"flexibility of assignment[,] . . . [a]ccepting applicants who could only work at a few non-

hardship posts would be considered unfair to other [employees] and detrimental to the morale

and success of the program."  Id.

     In affirming the district court, the court of appeals held that the employer "introduced

sufficient evidence to support a claim of undue hardship by virtue of the loss of essential

operational flexibility that would have resulted from an attempt to accommodate [plaintiff's]

medical needs."  Id. at 1189.  While the court did not extensively lay out the contents of the

administrative record that was before the district court, notably it did not discuss any financial

impact that the accommodation would have had on the employer.  Id. at 1188.  The court

explicitly rejected the plaintiff's argument "that an agency 'must establish 'undue hardship'

through objective evidence, not mere supposition, of the actual impact of any proposed

accommodation on specific aspects of its program.'"  Id. at 1189.

     Here, the affidavit of Mr. France clearly sets forth the operational burdens that would be

caused as a result of Plaintiff's requested accommodation.  Multiple ASL interpreters would

have been required to assist Plaintiff in conducting face-to-face interviews with the public; those

interpreters would have to be trained in Title 16 policy so that they could provide informative

assistance and guidance during the interview; and the need to transmit information through an

interpreter during each of Plaintiff's interviews would lengthen the amount of time needed for

each interview, thereby reducing the number of interviews Plaintiff could conduct (and thereby

in effect increasing the number of interviews to be conducted by her coworkers). (Def.'s Mot.,

Ex. 18, Affidavit of Douglas France). The fact that the Agency did not cite monetary concerns is

not dispositive. As in Barth, the Agency has clearly set forth the negative impact the requested

accommodation would have on its operations. See 29 C.F.R. § 1630.2(p)(2)(iv) & (v).[10]

Because she was so focused on Defendant's lack of monetary arguments, Plaintiff has done

nothing to refute these arguments. Therefore, the Court should find that the Defendant has

demonstrated that providing Plaintiff with a full-interpreter to communicate with the public

would have been an undue burden for the Agency.[11]

Finally, Plaintiff's continued reliance on Vitale v. Massanari, EEOC Doc. 02980014,

2001 WL 704284, at *1 (June 13, 2001) should be disregarded. Significantly, Vitale is an EEOC

opinion, which is not binding in any way, shape, or form, on this Court. See Redd v. Summers,

232 F.3d 933, 940 (D.C. Cir. 2000). Furthermore, Vitale is distinguishable from this case for

_____

[10]The fact that the Agency was willing and did provide Plaintiff with an interpreter for 32 hours per week to assist Plaintiff in her interactions with her mentor and her peers does nothing to affect the Agency's argument that providing such services, during the time of Plaintiff's interviews with the public, would be disruptive to the Agency's functions.

[11]Plaintiff's suggestion that the Court should "reject the undue hardship defense as a matter of law, even if the rest of the case is allowed to go to trial . . ." pursuant to Federal Rule of Civil Procedure 56(c) is completely lacking in merit. (Pl.'s Reply at 20). Notably, it is not apparent that Rule 56(c) permits the Court to make such a ruling. Rather, it permits the Court to render "[a] summary judgment, interlocutory in character. . . on the issue of liability . . . ." Fed. R. Civ. P. 56(c). Because the undue burden defense is an affirmative defense, rejection of this argument does not entitle Plaintiff to a favorable liability finding under Rule 56(c), notably in light of Defendant's argument that Plaintiff was not otherwise qualified under the Rehabilitation Act. For these same reasons, the Court should reject Plaintiff's request that the Court hold that this is a mixed motive case under Rule 56(c). (Pl.'s Reply at 45).

several reasons.  First, although the job position in <u>Vitale</u> involved interviewing claimants, it was

at the GS-8 level and it is not apparent from the opinion whether the other job functions were

identical to Plaintiff's GS-11 position as a Social Insurance Specialist/Claims Representative.

<u>Id.</u>[12]  Second, the Agency there explicitly raised as an "undue hardship" the financial cost of the

interpreter services.  <u>Id.</u>  The EEOC found, however, that in support of its argument that the

provision of a full-time interpreter "would impose an undue hardship because [it would be]

economically unfeasible . . . ." the Agency failed to "provide any detailed data to support its

contention . . . but instead made only general conclusory statements about the associated

economic hardship."  <u>Id.</u> at *2.  In light of the agency's size, number of employees, the provision

of interpreter services to another employee, and the intent behind the Rehabilitation Act that

accommodations involving "de minimis cost" be granted, the EEOC concluded that hiring

"either a full-time or part-time interpreter for grievant would not be an undue hardship."  <u>Id.</u>  In

reaching this conclusion, the opinion does not provide any findings regarding whether re-

allocating an essential function of a job position would be an "undue hardship."  Notably,

however, the EEOC stated very clearly that "[t]he agency . . .was <u>not</u> required by regulation to

restructure the Svce Rep job by reallocating an essential function, such as face-to-face

interviewing."  <u>Id.</u> (citing 29 C.F.R. app. § 1630.2(o) (emphasis added).

        In sum, <u>Vitale</u> does not support Plaintiff's belief that the Agency was required to support

its undue hardship defense with economical or other resource data.  Rather, it supports the

---

[12]It is worth noting that in <u>Vitale</u>, the employee had previously worked in the GS-8 Tele-
service Representative position in the state of Washington in a unit consisting of deaf employees.
2001 WL 704284, at *1 & n.1.  She sought the same position in Cincinnati, where she needed to
relocate for personal reasons.  <u>Id.</u>  However, rather than placing her in the GS-8 position, the
Agency transferred the employee to a clerical, GS-5 position.  <u>Id.</u>

Agency's argument that it would have been an undue hardship to re-allocate the essential

function of Plaintiff's job position, i.e., face-to-face interviewing.  For these reasons, Defendant,

not Plaintiff, is entitled to summary judgment on Count I of the complaint.

## II.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT.

Despite the confidence with which Plaintiff seeks summary judgment on Count I of her

Complaint, she contends that summary judgment on Count II, in which she alleges claims of

discriminatory and constructive discharge, cannot be granted.  This is so, according to Plaintiff,

because discovery is needed in order to properly oppose Defendant's arguments.  Furthermore,

Plaintiff contends that Defendant has not relied upon admissible evidence in support of its

arguments and indeed, there is evidence that Defendant's asserted justification for terminating

Plaintiff is pretextual.  Plaintiff's arguments are lacking in merit and summary judgment is

warranted in Defendant's favor.

### A.    Discovery is Not Required Prior to Granting Defendant's Motion for Summary Judgment on Count II.

In conjunction with the filing of her opposition to Defendant's cross-motion for summary

judgment, Plaintiff has filed a Motion for Continuance to Allow Discovery in Order to Respond

to Defendant's Motion for Summary Judgment ("Pl.'s 56(f) Mot.").  Discovery is not warranted

in this case for several reasons.

First, the issue of whether Plaintiff was "otherwise qualified" under the Rehabilitation

Act, and thus entitled to the protections of that Act, are a part of the parties' arguments in

relation to Count I of the Complaint.  As Plaintiff concedes, both parties have sought summary

judgment on Count I of the complaint "reflecting a mutual belief that this count can be decided

without discovery." (Pl.'s 56(f) Mot. at 1). Thus, to the extent Plaintiff agrees that resolution of Count I is not dependent upon discovery, a finding that she was not "otherwise qualified" precludes her claim in Count II as well, and none of the discovery she seeks relates to this issue. See Holguin v. City of Albuquerque, No. Civ.A. 05-0302, 2006 WL 1228872, at *13 (D.N.M. Mar. 31, 2006) (denying plaintiffs' Rule 56(f) request where the discovery they sought did not relate to the defendant's qualified immunity defense); Vestcom Int'l v. Chopra, 114 F. Supp. 2d 292, 296 (D.N.J. 2000) ("[W]here the Court finds that the issue to which the requested Rule 56(f) discovery would be relevant is not material to the dispute, a Rule 56(f) objection will not defeat a motion for summary judgment.").

Second, the issues about which Plaintiff seeks discovery are not material to resolution of this matter. Specifically, the discovery sought by Plaintiff would not establish that the Defendant's reason for terminating her were pretextual. For example, Plaintiff seeks information regarding whether Ms. Wells "acted with hostility out of annoyance" for Plaintiff's request for an accommodation. (Pl.'s 56(f) Mot. at 6). Plaintiff says this fact could possibly establish direct evidence of discrimination; however, this fact would not establish whether Ms. Wells discriminated against Plaintiff on the basis of her disability. Plaintiff also seeks discovery regarding whether there were appropriate vacancies to which she could have been assigned because she believes this fact relates to the credibility of the claim that she was fired because she could not perform at the GS-11 level. (Id.). However, even if there were vacancies in other positions, this would not alter the fact that Plaintiff was not performing well at the GS-11 level – a fact which she herself admits. (Pl.'s Stmt. ¶ 23). In addition, Plaintiff resigned from her position and does not indicate that she ever requested an accommodation. (Def.'s Mot., Ex. 12).

Plaintiff believes it is also "material" to her case to determine whether the misconduct alleged in the June 8, 2004 memorandum was one of the reasons for Ms. Walters' firing her; the interpretations of certain statements made by Ms. Wells; and the records of all the claims relied upon in determining that Plaintiff made errors.  (Pl.'s 56(f) Mot. at 8).  However, at no time does Plaintiff contest the accuracy of the documents submitted.  Thus, while interesting, none of these issues, or the others raised by Plaintiff in her motion and her affidavit, directly relate to the issue of whether the Defendant's proffered reason for her termination was pretextual.  Indeed, many of these asserted reasons are completely irrelevant.[13]  See, e.g., Holguin, 2006 WL 1228872, at *10 (denying Rule 56(f) motion where "[a]lthough the rule 56(f) affidavit specifies what information the [p]laintiffs are seeking in discovery, the affidavit does not demonstrate 'a connection between the information [sought] in discovery and the validity of the defendant's . . ." defense); Jones v. City & Cty. of Colorado, 854 F.2d 1206, 1211 (10th Cir. 1988) (noting that rule 56(f) motions should be denied "when the desired discovery would not meet the issue on which the moving party contends there is no genuine factual issue.") (citations omitted).

Third, and finally, Plaintiff already has access to most, if not all, of the documents Defendant relies upon in support of his summary judgment motion.  Specifically, in light of the administrative proceedings that preceded this matter, Plaintiff has documentary evidence that can be used to support her claim.  Indeed, it is important to note that Plaintiff has in fact defended against summary judgment on Count II of the complaint.  (Pl.'s Reply at 24) (noting that Plaintiff is presenting arguments on the merits in opposition to Defendant's request for summary

---

[13]Notably, Plaintiff's counsel merely adopts the statements set forth in Plaintiff's affidavit, without explicitly explaining how these facts will aid Plaintiff in proving her claims.

judgment in the event the Court does not grant her Rule 56(f) motion).  Thus, Plaintiff has not

been prejudiced by the lack of discovery in this matter and the Court should deny her Rule 56(f)

motion.

> **B.    Plaintiff Cannot Establish that She was Discriminated Against in Violation of the Rehabilitation Act.**

Plaintiff's arguments do nothing to diminish the Agency's entitlement to summary

judgment on Count II of her complaint.  In that Count, Plaintiff contends that she was terminated

in retaliation for seeking an accommodation (Compl. ¶ 15) and that the termination therefore

violated the Rehabilitation Act.  Plaintiff also appears to assert a claim that she was

constructively discharged.  (Id. ¶ 22).

As argued previously, Plaintiff has not shown any direct evidence of discrimination.

Therefore, she must rely upon the burden shifting paradigm used in McDonnell Douglas v.

Green, 411 U.S. 792 (1973).   See Rosell v. Kelliher, 468 F. Supp. 2d 39, 44 (D.D.C. 2006).

Plaintiff cannot establish a prima facie case of discrimination under the Rehabilitation Act.  To

do so, she must show that "she is a qualified person with a disability; that she can perform the

essential functions of her job with or without reasonable accommodation; and . . . that she was

terminated due to her disability."  Clayborne, 448 F. Supp. 2d at 189 (citing Barth, 2 F.3d at

1186) (other citation omitted).  As previously argued, Plaintiff cannot show that she was able to

perform the essential functions of her job, with or without reasonable accommodation.  See

supra, at 5-8.

However, even assuming that Plaintiff could make a prima facie showing of

discrimination, Defendant has demonstrated that it had a "legitimate nondiscriminatory reason

for the adverse employment action."  Rosell, 468 F. Supp. 2d at 44.  Even assuming the

17

memoranda issued to Plaintiff outlining her performance deficiencies are not admissible, as

Plaintiff contends, (Pl.'s Reply at 32),[14] there is sufficient admissible evidence in the record

establishing Defendant's justifications for terminating Plaintiff.  Specifically, the affidavits of

Lorna Walters and Robin Wells adequately set forth the Agency's explanation that Plaintiff was

terminated "based on [her] failure to fully demonstrate her fitness and qualifications for

continued employment."  (Def.'s Mot., Ex. 2, ¶ 8); see also id., Ex. 9 (Affidavit of Robin Wells,

¶ 11) ("I proposed [Plaintiff's] termination during her 2-year trial period because she had not

demonstrated the ability to do the work of the CR position, despite the one-on-one mentoring,

and refresher training.  I did not recommend her for termination because she is deaf.").  Plaintiff

has not set forth any arguments that shed any doubt on this justification.

### C.    Plaintiff Has Failed to Show that the Agency's Justifications are Pretextual.

Having proffered a legitimate reason for her termination, the burden shifts to Plaintiff to

demonstrate that the Defendant's reason is pretextual and discrimination was the real reason for

her termination.  Rosell, 468 F. Supp. 2d at 44.  Plaintiff cannot meet this burden of proof.

Plaintiff contends that a jury could determine that Defendant's proffered justification for

terminating Plaintiff is pretextual for several reasons, none of which are sufficient for purposes

---

[14]But see Brown v. ASD Computing Ctr., 519 F. Supp. 1096, 1103 & n.2 (S.D. Ohio 1981) (noting that letter to plaintiff outlining his performance deficiencies could potentially be admissible pursuant to Fed. R. Civ. P. 803(6)).  Furthermore, the letter to Plaintiff dated September 10, 2004 (Def.'s Mot., Ex. 11), informing her of her termination is admissible pursuant to Federal Rule of Civil Procedure 803(8), which provides a hearsay exception for "[r]ecords . . . [and] statements . . . in any form, of public . . . agencies setting forth . . . matters observed pursuant to duty imposed by law at to which matters there was a duty to report . . . ." Fed. R. Civ. P. 803(8).  Pursuant to 5 C.F.R. 315.804, in terminating a probationary employee, the Agency was required to notify Plaintiff, in writing, "as to why [she was] being separated and the effective date of the action."  This notice "shall, as a minimum, consist of the agency's conclusions as to the inadequacies of [the terminated employee's] performance or conduct."  Id.

of defeating summary judgment:[15]

First, Plaintiff contends that because Defendant found that she performed adequately for her first year of employment at the GS-9 level, the jury could conclude that she had continued to do so. Pl.'s Reply at 30. Plaintiff relies upon Paquin v. FNMA, 119 F.3d 23, 27 (D.C. Cir. 1997) for the proposition that an employee's prior successful work performance, including the fact that the employee had been previously promoted, can suffice to demonstrate that the employee is qualified for purposes of establishing a prima facie case. Id. However, this argument does nothing to show that the Defendant's legitimate reason is pretextual in light of the admissible evidence that Plaintiff was not performing adequately at the GS-11 level. Additionally, unlike in Paquin where the appellate court agreed with the district court that the plaintiff's "twenty-year tenure . . . and his series of promotions within the Department suffice to show that he was qualified for his position[,]" Plaintiff here was not successfully rated at the GS-11 level, the position from which she was terminated. Rather, her prior evaluation was at the GS-9 level, which, among other things, had not involved the same level of independent claim adjudication as the GS-11 position. Compare Def.'s Mot., Ex. 6 with Def.'s Mot., Ex. 7 (noting that GS-11 position "[f]inally adjudicates and finally authorizes for payment, without subsequent review, claims for benefits . . . ."). Thus, there is no evidence, as in Paquin, that Plaintiff had

---

[15]Plaintiff's argument that Defendant seeks to have Plaintiff establish she is qualified as part of her prima facie case as well as part of the pretext phase is nonsensical. Pl.'s Reply at 28. Rather, Defendant merely maintains that if Plaintiff establishes a prima facie case of discrimination, and Defendant asserts a legitimate reason for its actions, then it is Plaintiff's burden to show that the reason (i.e., that she could not perform the essential functions of the duty) is pretextual. This formulation of the burden-shifting paradigm does not require Plaintiff to re-establish that she is qualified; rather, she must point to evidence to discredit the Defendant's legitimate reason for her termination. See Rosell, 468 F. Supp. 2d at 44.

been successfully performing in her GS-11 position for many years, or ever for that matter.  In

fact, there is evidence that Plaintiff was <u>not</u> able to perform the essential functions of her

position at the GS-11 level, including her own concessions.  <u>See</u> <u>supra</u>, at 5-6.

 Next, Plaintiff contends that the union-management contract that governed her

employment included a "presumption of successful performance during the first 90 days after an

employee is informed of serious performance deficiencies."  (Pl.'s Reply at 31).  Under

Plaintiff's circular reasoning, the June 28, 2004 memorandum, which Plaintiff also contends is

inadmissible for purposes of summary judgment (<u>see</u> <u>supra</u>, at 17 n.15), either does "or . . . does

not" constitute the sort of notice contemplated by the contract, but in any case, "the presumption

of successful performance created by the October 2003 performance evaluation remained in

effect as of mid-September 2004."  (Pl.'s Reply at 31).  This argument can be summarily

rejected.[16]  First, it is not apparent from the provision of the collective bargaining agreement that

this provision is applicable to Plaintiff, who was a probationary employee.  Second, even if it

were, Plaintiff's 2003 performance evaluation pertained to her performance as a GS-9 employee,

not a GS-11 employee.  (Pl.'s Mot., Ex. 5).  Third, Plaintiff made a decision to forego her

remedies under the collective bargaining agreement, and therefore has not exhausted her

administrative remedies as it pertains to that agreement.  She should not be heard to claim in this

Court regarding her entitlement to the protections under the collective bargaining agreement that

she chose not to seek to enforce.

 Plaintiff next presents a series of arguments, based upon federal regulations and the

---

 [16]  Notably, Plaintiff has omitted page 144 of the union contract, which contains the
remainder of the provision she relies upon.  <u>See</u> Pl.'s Reply, Ex. 2.

collective bargaining agreement that governed the Agency's relationship with the union that represented Plaintiff, which she believes supports a finding of pretext in this case. It is clear that these arguments are nothing but red herrings designed to divert the Court's attention from the legal issues relevant to resolution of this matter because none of them specifically address Defendant's contention that Plaintiff was unable to perform the essential functions of the GS-11 position.

For example, Plaintiff argues that federal regulations require that the Agency demonstrate that Plaintiff's inadequate performance was based on specific performance standards. (Pl.'s Reply, at 34). However, the Agency has submitted to the Court the applicable job responsibilities for the position Plaintiff held. See Def.'s Mot., Ex. 7. In addition, Defendant has submitted the affidavits of Robin Wells, Plaintiff's immediate supervisor, and Lorna Walters, Ms. Wells' supervisor, regarding the precise areas in which Plaintiff's performance was lacking. Plaintiff has done nothing to refute these affidavits; nor has she attempted to refute the Agency's determination that she was not capable of meeting the performance responsibilities contained in the position description. Nor does she refute Ms. Wells' statement that Plaintiff received progress reviews regarding her performance, as well as extensive mentoring. (Def.'s Mot., Ex. 9, ¶¶ 6, 9). Notably, the September 10, 2004 memoranda to Plaintiff notifying her of her termination specifically notes that Plaintiff had a "midyear performance discussion" with Ms. Wells. (Def.'s Mot., Ex. 11). Thus, any inference that Plaintiff was unaware of her performance standards is contrary to the evidence before the Court.[17]

_____

[17]Plaintiff contends that 5 U.S.C. § 4303 entitled her to certain "pre-termination protections." While according to that provision, Plaintiff was entitled to 30 days notice of her termination, she cannot establish that this establishes pretext in this case because she resigned

Aside from the federal regulations, Plaintiff contends that pursuant to the union contract, management was required to provide her with a Performance Enhancement Plan ("PEP") to assist her in remedying her problems.  Pl.'s Reply at 37.  Plaintiff states that failure to do so supports a finding of pretext.  However, Article 21 of the contract, upon which Plaintiff relies, applies to employees who are not on probation.  The section governing probationary employees, Article 33 (attached as Exhibit A), is the section applicable to Plaintiff.  Under Article 33, section C, Plaintiff was only entitled to receive "[o]ngoing counseling about [her] conduct and performance and [her] standing through completion of their probationary period."  Ex. A. Plaintiff cannot dispute the fact that she did in fact receive such ongoing counseling regarding her conduct from Ms. Wells.  (Def.'s Mot., Ex. 9)

Next, Plaintiff contends that Defendant cites no evidence that Plaintiff was actually informed of the standards to which she had to strive to meet, as required by the civil service regulations.  Pl.'s Reply at 38.  Indeed, Plaintiff contends that "defendant's motion submits no evidence of the performance standard for journeyman Claims Representative nor the degree to which Ms. Friends fell short of the standard."  (Id.).  This statement is readily belied by reference to Exhibit 7 of Defendant's motion for summary judgment, which contains the position description of the GS-11 Social Insurance Specialist/Claim Representative position.  (Def.'s Mot., Ex. 7).  Included in this description are the requirements and responsibilities of the position.  And notably, this position description specifically states that the ability to conduct interviews with claimants and to "adjudicate[ ] and finally authorize[ ] for payment, <u>without</u>

---

from her position after receiving notice of the termination.  (Def.'s Mot., Ex. 12).  In addition, Plaintiff was provided with a written notice of her termination that clearly set forth the justification for her termination as required by 5 U.S.C. section 4303.

subsequent review, claims for benefits and eligibility to all programs . . . ." were two of the

"critical elements" of the position.  (Def.'s Mot., Ex. 7).  These were two specific areas in which

Plaintiff was deficient.  See Def.'s Mot., Ex. 8, 9, 11.  Plaintiff does not explain how this

document did not adequately inform her of the standards by which her performance would be

judged.  And, as noted, supra, Plaintiff clearly had a midyear performance discussion at which

her performance was discussed.  Any suggestion to the contrary is not supported by any evidence

on her behalf.

    Plaintiff presents three final arguments that she believes can show the Agency's reasons

for terminating her were pretextual: First, the Agency failed to reassign her to another position;

second, the Defendant did not permit a "cost-free" trial of the interpreter services to determine

what effect these services could have on Plaintiff's performance; and third, the Agency failed to

grant Plaintiff's request to review certain GS-9 training tapes.  Each of these arguments can be

summarily rejected.

    First, the union provision cited by Plaintiff did not require that the Agency reassign her to

another position.  Pl.'s Reply, Ex. 3, at 145  (noting that employer may consider reassigning an

employee whose performance is unacceptable).  In addition, this argument does not support

Plaintiff's showing that the Defendant's reasons for her termination were pretextual because, as

previously argued, since Plaintiff was not a qualified individual with a disability under the

Rehabilitation Act, the Agency had no duty to her pursuant to that Act.  And, as previously

stated, this argument does not refute the Agency's contention that Plaintiff was simply not

qualified to perform the duties of the GS-11 position; nor does Plaintiff offer any case law for the

proposition that as someone who was not qualified, she was entitled to be reassigned.[18]  Cf. Nanette v. Snow, 343 F. Supp. 2d 465, 476 & n.11 (D. Md. 2004) (declining to address plaintiff's argument that agency did not consider reassigning her when the accommodations she sought were "unreasonable on their face.").

Next, Plaintiff states that because Defendant did not attempt to determine whether her performance would have improved with the services of an interpreter for claimant interviews, the jury could conclude that her termination was pretextual.  However, as this accommodation was not reasonable and would have eliminated one of the essential functions of her position, Defendant was not required to "try it out."  See supra, at 6-13.  Plaintiff further concludes that a jury could speculate that there was discrimination based on the Agency's accommodation of providing an interpreter to her to communicate with her mentor, "nothwithstanding the fact that an interpreter was not needed for this reason."  Pl.'s Reply at 42.  However, Plaintiff specifically made a request for an interpreter during her mentoring sessions and to assist her with her interactions with fellow employees.  Def.'s Mot., Ex. 13 ("Lack of interpreter services has made it difficult to participate in training and mentoring as well as interaction with fellow employees.").  Plaintiff does not fully explain how a jury could find pretext based on the fact that the Agency granted one of her requests for an accommodation.

Finally, Plaintiff contends that a jury could find that Defendant's reason for terminating

_____

[18]Notably, under the prior relevant regulations, as a probationary employee, Plaintiff would not have been entitled to reassignment.  29 C.F.R. § 1614.203(g) ("When a nonprobationary employee becomes unable to perform the essential functions of . . .her position . . . an agency shall offer reassignment . . . ."); see also Craig v. Potter, 90 Fed. Appx. 160, (7th Cir. 2004) (quoting section 1614.203(g)).  This regulation was amended on May 21, 2002, and makes a governmental agency's responsibilities under the Rehabilitation Act identical to those of private employers under the ADA.  See 29 U.S.C. § 1614.203(b).

Plaintiff's employment is pretextual based upon the fact that Plaintiff requested, and did not

receive, the tapes pertaining to the GS-9 training she had received.  Pl.'s Reply at 43.  Plaintiff

does not explain adequately how this failure would support a finding of discriminatory pretext.

Notably, it does not undermine the Agency's asserted justification for terminating Plaintiff – i.e.,

that she did not perform adequately at the GS-11 level.  And Plaintiff herself has already

conceded that she could not perform at this level.  Furthermore, in light of the extensive

mentoring and the other accommodations that were provided to Plaintiff, this fact alone does not

show that the Agency's reason for her termination was pretextual.

### D.    Plaintiff's Speculative Arguments Do Not Preclude Summary Judgment.

Plaintiff makes additional speculative arguments regarding findings that a jury could

make that, in her opinion, should preclude summary judgment.  These contentions do not warrant

much discussion.

First, Plaintiff states that "defendant has a practice of discharging disabled employees

during their probationary periods if they are unable to perform all the essential duties of their

positions[.]"  Pl.'s Reply at 26.  However, the Walters' affidavit to which Plaintiff cites does not

support this contention at all.  Rather, the portion of the affidavit relied upon by Plaintiff merely

states that new employees are subject to a two-year trial period, during which time the Agency

must determine whether to retain the employee beyond the trial period.  Def.'s Mot., Ex. 2, ¶ 3.

"The decision to retain an employee beyond the trial period is not taken lightly and is made

based on management's consideration that the employee has demonstrated the necessary traits

and ability to independently perform the duties of her position."  Id.  These statements do not

provide any support for Plaintiff's theory that the Agency has a "practice" of discharging

"disabled" employees during their probationary periods, and Plaintiff's theory is pure speculation and conjecture, which are not sufficient to defeat a motion for summary judgment. Maramark v. Spellings, No. Civ.A. 01-2206, 2006 WL 276979, at *22 (D.D.C. Feb. 3, 2006 ) ("Plaintiff's own speculation and conjecture, absent some affirmative evidentiary proof, is insufficient to defeat summary judgment.") (citations omitted).

Next, Plaintiff contends that a jury could conclude that Defendant terminated Plaintiff because she could not interview claimants without an ASL interpreter.  Pl.'s Reply at 27.  This theory is in part premised on the fact that Doug France, the Equal Employment Specialist at the Agency's Office of Civil Rights and Equal Opportunity, stated in his affidavit that if Plaintiff "was not fluent in the English language because she can not hear, read lips and/or did not have audible/understandable speech, she is not qualified to perform the duties of the Bi-lingual CR position."  Def.'s Mot., Ex. 18, at 2.  However, Mr. France was not the decisionmaker who terminated Plaintiff, so to the extent that his remark can be considered discriminatory, which it is not, it does not suffice as direct evidence of discrimination.  See Bardy v. Livingood, 456 F. Supp. 2d 1, 6 (D.D.C. 2006) ("While courts have not precisely defined what constitutes 'direct evidence,' it is clear that 'at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by non-decision-makers or statements by decisionmakers unrelated to the decisional process itself.'") (citations omitted).  Plaintiff also cites to a portion of the Agency's brief in support of summary judgment submitted to the EEOC wherein the Agency contended that Plaintiff's inability to communicate in sign language precluded her from being qualified for the bilingual claims representative position because she was not fluent in "two" languages.  Pl.'s Reply at 27.  According to Plaintiff, "[a] jury could easily infer that if Ms.

26

Friends' inability to interview without an ASL interpreter would have led defendant to not hire her, that same inability would have led defendant to fire her." Id. The problem with Plaintiff's formulation is that it is again based on speculation. In addition, it is based on an assumption that the request for an ASL interpreter was a "reasonable" request. See supra, at 6-8. As argued previously, an employer is not required to hire, nor retain, a disabled employee who cannot perform the essential functions of the position, and is not required to provide an accommodation that is not reasonable. Id.

### E. Plaintiff Has Conceded Defendant's Argument that She was not Constructively Discharged.

In his opening motion, Defendant argued that Plaintiff cannot, as a matter of law, establish that she was constructively discharged. (Def.'s Mot. at 22-24). In her reply, Plaintiff does not address, much less attempt to refute, Defendant's argument. Plaintiff's failure to even address her constructive discharge claim is fatal to this claim. Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp.2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)); see also United States v. Real Prop., Parcel No.03179-005R, Civ. A. No. 01-0706, 2003 WL 224053382 at *12 (D.D.C. Oct. 21, 2003); Bancoult v. McNamara, 227 F. Supp.2d 144, 149 (D.D.C. 2002). Accordingly, the Court should grant summary judgment to Defendant, finding that Plaintiff can not, as a matter of law, establish a claim of constructive discharge.

### CONCLUSION

For the reasons set forth above and in Defendant's Cross-Motion for Summary Judgment,

summary judgment is warranted in Defendant's favor on both counts of Plaintiff's complaint.

Respectfully submitted,

   /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

   /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT


Of Counsel:

Nicholas R. Cerulli
Craig Ormson
Assistant Regional Counsel
Social Security Administration
Office of the General Counsel – Region III
P.O. Box 41777
Philadelphia, PA 19101

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ALICE ANN FRIENDS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 06-1762 (ESH)** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**[PROPOSED ORDER] GRANTING DEFENDANT'S CROSS-MOTION FOR**
**SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR A**
**CONTINUANCE TO ALLOW DISCOVERY IN ORDER TO RESPOND TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter having come before the Court on Plaintiff's Motion for Partial Summary

Judgment, Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment,

Defendant's Cross-Motion for Summary Judgment, and Plaintiff's Motion for Continuance to

Allow Discovery in Order to Respond to Defendant's Motion for Summary Judgment, it is

hereby

**ORDERED** that Defendant's Cross-Motion for Summary Judgment is granted. It is

further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment is denied. It is further

**ORDERED** that Plaintiff's Motion for Continuance to Allow Discovery in Order to

Respond to Defendant's Motion for Summary Judgment is denied. It is further

**ORDERED** that Plaintiff's complaint is dismissed with prejudice.

**SO ORDERED** on this _____ day of _____, 2007.

_____

_____UNITED STATES DISTRICT JUDGE