UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
ALICE ANN FRIENDS,             )
        Plaintiff,             )
                               )
        v.                     )
                               )  06-CV01762-ESH
JOANNE B. BARNHART,            )
        Defendant.             )
                               )
_____)
```

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S

MOTION FOR DISCOVERY


The Supreme Court held in *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) that an employment discrimination plaintiff is not to lose his or her suit for being unable to identify, prior to commencement of discovery, either direct evidence or indirect (i.e., *McDonnell Douglas*-based) evidence of discrimination.  The unanimous court's reasoning was two-fold.  First, the plaintiff is entitled to search for direct evidence in the hands of the defendant before seeking to make out a direct case of discrimination. 534 U.S. at 511-2.  Second, the plaintiff is entitled to search for the 'facts and evidence' that would define the

*McDonnell-Douglas* prima facie case before attempting to prove such a case.[1]  534 U.S. at 512.

Four years later, defendant has filed a summary judgment motion in a discriminatory discharge case. Defendant says, first, "Plaintiff has not shown any direct evidence of discrimination.  Therefore, she must rely upon the burden shifting paradigm used in McDonnell Douglas . . ." Def. Reply at 17.  And, says defendant, at the time Ms. Friends filed her suit, i.e., in the absence of discovery, Ms. Friends has insufficient evidence to prove an appropriate *McDonnell Douglas* case.  Def. Motion at 20-1; Def. Reply at 20-1.

And why does not *Swierkiewicz* not entitle Ms. Friends to discovery before having to prove her case either through direct evidence or through *McDonnell Douglas* indirect

---

[1] Thus, as the government explained in its brief to the Court in Swierkiewicz,

> [T]he inquiry into the existence of a prima facie case in all cases reduces to whether the plaintiff has produced "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." [Citation omitted]  That standard is appropriate for evaluating a record at the summary judgment or trial stage, when discovery has developed and clarified the parties' claims.  But it would be precipitate to undertake such an inquiry before discovery commences.

Brief for the United States and the Equal Employment Opportunity Commission as Amici Curiae Supporting Petitioner at 14, *Swierkiewicz v. Sorema* (emphasis added).

evidence?  It is not totally clear, as defendant treats the Supreme Court's decision with a silence it hardly warrants.

Instead, defendant cites two lines of cases in which discovery is unnecessary or discountenanced.  The first, exemplified by *Jones v. City & County of Denver*, 854 F.2d 1206 (10th Cir. 1988) and *Holguin v. City of Albuquerque*, No. Civ. A. 05-0302, 2006 U.S.Dist. LEXIS 29489 (D.N.M. Mar. 31, 2006), is where the defendant government officials rely on a qualified immunity defense.  Special rules govern discovery in these cases:

> Rule 56(f) discretion must be limited when a summary judgment motion is based on qualified immunity because insubstantial lawsuits "against government officials [should] be resolved *prior to discovery and on summary judgment if possible.*"  . . .  "Discovery is one of the burdens from which defendants are sheltered by the immunity doctrine."

854 F.2d at 1211 (citations omitted;  emphasis in original).

Government defendants in employment discrimination suits, on the contrary, enjoy no such qualified immunity, and therefore are not sheltered from the burdens of litigation, including discovery.

The second line of cases, exemplified by *Westcom International, Inc. v. Harish Chopra*, 114 F.Supp.2d 292 (D.N.J.), is where "the basic facts are not in dispute.

The contested issues are primarily legal, involving only interpretation of the relevant documents and their legality in light of the applicable law." 114 F.Supp.2d at 296.

Relying on these cases, defendant makes three arguments. First, defendant says that if this court, in deciding Count I, makes "a finding that she was not 'otherwise qualified,'" that finding "precludes [Ms. Friends'] claims on Count II as well." Def. Reply at 15. However, "otherwise qualified" is a specific phrase of art in accommodation cases. It refers to basic qualifications such as education, certificate, etc., as a step in determining final qualifications:

> The ADA prohibits discrimination on the basis of disability against qualified individuals with disabilities. The determination of whether an individual with a disability is "qualified" should be made in two steps. The first step is to determining if the individual satisfies the prerequisites for her position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. For example, the first step in determining whether an accountant who is paraplegic is qualified for a certified public accountant (CPA) position is to examine the individual's credentials to determine whether the individual is a licensed CPA. This is sometimes referred to in the Rehabilitation Act caselaw as determining whether the individual is "<u>otherwise qualified</u>" for the position.

29 C.F.R. § 1630 App. at 1630.2(m) (emphasis added).

- 4 -

Defendant has never asserted that Ms. Friends was not even 'otherwise qualified' as defined by these regulations. What defendant argued against count I of our complaint is that even if Ms. Friends' deafness had been accommodated, she could not have met the standard of adjudicating claims for payment "<u>without subsequent review</u>," Def. Reply at 22-3 (Def.'s emphasis).

It must be kept in mind that the parties agree that Ms. Friends was a perfectly capable GS 9 claims representative. Pl. Mot. Exh. 5.  Defendant promoted her to GS 11, Pl. Mot. Exh. 9, and effectively contends that in accordance with the Peter Principle, the promotion was to a level of responsibility beyond her level of competence. Even if that were true,[2] Ms. Friends would not have lost the protection of the Rehabilitation Act simply by virtue of being promoted.  At bare minimum, Ms. Friends would still be entitled to the same opportunity to improve as non-disabled employees were, and the same opportunity to be reassigned as non-disabled employees were.

---

[2]  Our argument that Ms. Friends was entitled to accommodation to her deafness even if her performance was sub par is not an admission or concession regarding that performance.  We have certainly reserved for litigation under count II the question of how bad Ms. Friends' performance was if measured by objective standards or the standard applied to non-disabled employees in their second year of employment.

Defendant's second argument is that unless an employment discrimination plaintiff can identify, in a Rule 56(f) affidavit, the specific evidence proving discrimination to be obtained in initial discovery, her complaint must be dismissed without an opportunity for discovery. Def. Reply at 15-6. That is simply a reprise on the losing party's argument in *Swierkiewicz*. In both cases, the employer gets the complaint thrown out before the plaintiff has an opportunity for discovery, on the ground that she has to identify the facts upon which she intends to rely.

Defendant's attacks on the examples of discovery provided in our Rule 56(f) affidavits simply reveal the weakness of his argument. Defendant says that evidence that Ms. Wells acted with hostility towards Ms. Friends out of annoyance with her request for accommodation "would not establish whether Ms. Wells discriminated against Plaintiff on the basis of her disability." Def. Reply at 15. The distinction between firing Ms. Friends because she is disabled, and firing her because she requested an accommodation to her disability, is rather fine. The critical point, though, is that under *Swierkiewicz*, discovery into possible direct evidence of discrimination

does not, and cannot, depend on identifying that evidence before obtaining it.

Similarly, there is no logic to defendant's argument, Def. Reply at 16, that the following types of evidence are irrelevant to his claim that the true reason he fired Ms. Friends is that she did not perform well enough at the GS 11 level:  how far her performance fell below the GS 11 performance standards;  whether she was treated the same as non-disabled employees unable to meet the GS 11 standards during their second year of employment;  the actual errors she allegedly made;  and the degree to which the managers consciously counted Ms. Friends' inability to comprehend spoken English as a performance deficiency.

Surely, whether Ms. Friends actually met the performance standards, or whether non-disabled employees unable to meet GS 11 standards during their second year of employment were not fired, is relevant to whether the claim she was fired for poor performance was a mere pretext for discrimination.

Defendant's third argument is that by submitting a Rule 56(c) opposition to his motion, Ms. Friends demonstrated she has no need for the protection of Rule 56(f).  Def. Reply at 16-7.  We agree that if the court finds we have successfully opposed the defendant's summary

judgment motion on its merits, there will be no need to grant our Rule 56(f) motion.  On the other hand, Rule 56 does not require an election of remedies;  and none was made here.

## CONCLUSION

The court should postpone consideration of defendant's motion for summary judgment on count II until discovery has been obtained.

Respectfully submitted,

/s/

Phillip R. Kete
General Counsel, AFGE Local 1923
G-314 West Highrise
6401 Security Blvd.
Baltimore, MD  21235
D.C. Bar No. 375724
(410) 966-6500

April 24, 2007