# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|   |   |   |
|---|---|---|
| **ALICE ANN FRIENDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  06-01762 (ESH)** |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Plaintiff Alice Ann Friends has brought suit alleging that the Social Security

Administration ("SSA") violated the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, by

failing to make a reasonable accommodation to her permanent bilateral deafness (Count I) and by

unlawfully discharging her (Count II).  The parties have filed cross-motions for summary

judgment on Count I, defendant has moved for summary judgment on Count II, and plaintiff has

moved for discovery pursuant to Federal Rule of Civil Procedure 56(f).  For the reasons set forth

herein, the parties' summary judgment motions will be denied and plaintiff's Rule 56(f) motion

will be granted.

## BACKGROUND

Plaintiff is deaf in both ears and legally blind in her left eye.  (Def.'s Statement of

Material Facts as to Which There Is No Genuine Issue ["Def.'s Facts"] ¶ 2.)  She speaks English

_____

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as
commissioner of the Social Security Administration.  Fed. R. Civ. P. 25(d)(1).

but lacks complete control over her intonation.  (Pl.'s Statement of Material Facts in Supp. of Her Mot. for Summ. J. ["Pl.'s Facts"] ¶ 4.)  In September 2002, plaintiff was hired by the SSA as a GS-9 bilingual claims representative, a position that entailed conducting interviews with claimants to determine their eligibility for benefits.  (Def.'s Facts ¶¶ 1, 4.)  The SSA was aware of plaintiff's deafness when she was hired.  (Pl.'s Facts ¶ 9.)

Between October 2002 and March 2003, plaintiff received training by Interactive Video Technology ("IVT"), which allows students across the country to watch one instructor by television.  (Def.'s Facts ¶ 6.)  Plaintiff's class was closed-captioned, although she alleges that the closed-captioning was often inaccurate or missing.  (Pl.'s Statement of Genuine Issues[] in Resp. to Def.'s Cross-Mot. for Summ. J. ["Pl.'s Opp'n Facts"] ¶ 6.)  After plaintiff complained that she could not sufficiently understand the IVT sessions, an American Sign Language ("ASL") interpreter was provided to assist her.  (Pl.'s Facts ¶ 11.)  In addition, throughout plaintiff's IVT training, she was mentored by Michelle Ward, an experienced employee who is deaf and able to communicate in ASL.  (Def.'s Facts ¶ 7.)

After completing the IVT training, plaintiff began six months of on-the-job training. (Pl.'s Facts ¶ 12.)  When Ward went on maternity leave in March 2003, Monte Walker, a management support specialist, replaced her as plaintiff's mentor.  (Def.'s Facts ¶ 9.)  Walker found that plaintiff was difficult to work with and repeatedly asked the same questions.  (*Id.* ¶ 11.)  Gayle Syphax volunteered to mentor plaintiff in September 2003, but after a short period of time she requested to leave the role, citing the same problems as Walker.  (*Id.* ¶ 12.)  Walker then returned as plaintiff's mentor.  (*Id.* ¶ 13.)

Notwithstanding the apparent frustration of plaintiff's mentors, in October 2003 the SSA

certified that she had performed satisfactorily at the GS-9 level during the year ending September 2003.  (Pl.'s Facts ¶ 14.)  She was promoted to GS-11, the full-performance level of the position. (*Id.* ¶ 15.)

On March 11, 2004, plaintiff told a supervisor that she did not want Walker to continue as her mentor.  (Def.'s Facts ¶ 13.)  Robin Wells, the district manager of the Postal Plaza Field Office, then replaced Walker as plaintiff's mentor.  (*Id.*)  Wells observed that plaintiff had trouble asking appropriate questions in ways that claimants could understand, did not appear to understand claimants' responses, and had trouble with the technical aspects of her job.  (*Id.* ¶ 14.)

Although plaintiff was authorized to use an ASL interpreter for up to thirty-two hours per week to communicate with her supervisor and mentor (Pl.'s Facts ¶ 22), she was not authorized to use the interpreter during interviews with claimants.  Plaintiff submitted a written request for a full-time interpreter on March 11, 2004.[2]  (Def.'s Facts ¶ 22.)  On April 29, 2004, Doug France, an equal opportunity specialist, informed plaintiff that her request had been denied, explaining that interpreters were provided only for "meetings, training, mentoring, progress reviews, conference attendance, and other work-related events."  (Def.'s Opp'n Ex. 14 at 1.)  When plaintiff's union representative requested a reassessment, France affirmed the initial decision and reiterated that interpreters could not "be used to conduct interviews and/or other business with the public."  (Def.'s Facts ¶ 24 (quoting France email of June 4, 2004).)

---

[2] Plaintiff alleges that she also made multiple oral requests for a full-time ASL interpreter. (Pl.'s Facts ¶ 40.)  Defendant denies that such requests occurred.  (Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 40.)

Plaintiff first sought EEO counseling on June 9, 2004.[3] (Pl.'s Mem. in Opp'n to Def.'s Cross-Mot for Summ. J. & Pl.'s Reply to Def.'s Opp'n to Mot. for Summ. J. ["Pl.'s Reply"] Ex. 3 at 2.) On September 10, 2004, Lorna Walters, plaintiff's second-level supervisor, informed plaintiff that she was being terminated as of September 17, 2004. (Def.'s Facts ¶ 20.) On September 16, 2004, plaintiff resigned. (*Id.* ¶ 21.) She filed a formal EEO complaint the following day. (*Id.* ¶ 32.) The EEO process automatically terminated when plaintiff filed the complaint in this case on October 17, 2006.

## ANALYSIS

### I.    Standard of Review

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment shall not be granted unless "the pleadings, depositions, answers to interrogatories, . . . admissions on file, [and] . . . affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts

---

[3] Although defendant initially argued that plaintiff's contact with the EEO counselor was untimely, he has withdrawn this argument and now concedes that plaintiff exhausted her administrative remedies. (*See* Def.'s Reply in Further Supp. of Cross-Mot. for Summ. J. & Opp'n to Pl.'s Mot. for Disc. ["Def.'s Reply"] at 2 n.3.)

showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

## II.    Count I: Failure to Accommodate

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any Executive agency . . . ." 29 U.S.C. § 794(a) (2006). Section 501 of the Act further mandates that employers take affirmative steps to provide for qualified persons with disabilities. *Id.* § 791(b); *see Carr v. Reno,* 23 F.3d 525, 528 (D.C. Cir. 1994). In order to establish a prima facie case for failure to accommodate under the Rehabilitation Act, a plaintiff must show (1) that he has a disability within the meaning of the statute, (2) that the employer had notice of the disability, (3) that a reasonable accommodation would allow him to perform the essential functions of his position,[4] and (4) that the request for accommodation was denied. *E.g.*, *Thompson v. Rice*, 422 F. Supp. 2d 158, 165-66 (D.D.C. 2006).

Only the third element of the prima facie case is at issue here. As set forth below, there are genuine issues of material fact as to whether, even with the requested accommodation, plaintiff would have been able to perform the essential functions of her job. In addition,

---

[4] To the extent that plaintiff contends defendant was obligated to accommodate her request for a full-time ASL interpreter even if, despite such an accommodation, she would have remained unable to perform her job (*see* Pl.'s Reply at 16-17), she is incorrect. A plaintiff is entitled to a reasonable accommodation only if, with accommodation, he will be able to perform the essential functions of his position. To hold otherwise would eviscerate the requirement that the employee be "otherwise qualified." 29 U.S.C. § 794(a); *see Clayborne v. Potter*, 448 F. Supp. 2d 185, 190 (D.D.C. 2006) ("An individual who cannot perform the essential duties of her job, even with an accommodation, is not 'qualified' under the statute." ).

defendant has not shown that providing an ASL interpreter would have created an undue
hardship.  Thus, neither party is entitled to summary judgment.

### A.    Qualified Employee

The parties have proffered competent, conflicting evidence regarding plaintiff's
qualification for her position.  Plaintiff argues that her satisfactory performance review and
promotion from GS-9 to GS-11 in October 2003 indicate that she was qualified for her position.
(Pl.'s Facts ¶¶ 14-15.)  Defendant, however, has submitted affidavits from Walker and Wells
suggesting that plaintiff was not qualified for her position for reasons other than her deafness.
Wells has averred that plaintiff "had considerable difficulty asking the right questions in a way
the claimant could understand" and had "difficulties with the technical aspects of her job."
(Def.'s Opp'n Ex. 9 ¶ 6.)  Walker has stated that everything plaintiff submitted "came to [him]
with errors, large and small."  (*Id.* at Ex. 4 ¶ 4.)  Plaintiff "did not make independent decisions
and was always at [his] desk with the same questions."  (*Id.*)  Because there is conflicting
evidence regarding plaintiff's qualification for her position, plaintiff is not entitled to summary
judgment and defendant is not entitled to summary judgment on the theory that plaintiff was not
qualified.

### B.    Undue Hardship

Defendant might nevertheless be entitled to summary judgment on an alternative theory.
Even when, as here, a plaintiff's requested accommodation would constitute a reasonable
"*method*" of addressing the relevant disability, the employing agency is not required to provide
the requested accommodation if doing so would create an "undue hardship."  *E.g.*, *Barth v. Gelb*,

2 F.3d 1180, 1186, 1187 (D.C. Cir. 1993). The burden of proving undue hardship lies with the defendant. *E.g.*, *id.* at 1187.

Here, defendant asserts that granting plaintiff the full-time use of an ASL interpreter would have both required the SSA to hire and train two additional employees and reduced the rate at which plaintiff could conduct interviews. (Def.'s Opp'n at 19-20.) Although the France affidavit is consistent with defendant's assertions (*see id.* Ex. 18 at 4), defendant has not proved that employing two interpreters or diminishing the rate at which plaintiff could conduct interviews would have unreasonably affected the "composition, structure and functions of the workforce of [the SSA]" or the "geographic separateness and administrative or fiscal relationship of the facility [at which plaintiff was employed] . . . to the [SSA]." 29 C.F.R. § 1630.2(p)(2)(iv) (2006); *cf. Barth*, 2 F.3d at 1188 (upholding the district court's finding of undue hardship, citing the district judge's finding that "thin staffing at each post [to which the plaintiff sought assignment] required flexibility of assignment, put a premium on workers not subject to serious health risks, and offered few options for initial assignment of [the plaintiff]"). Furthermore, defendant has provided no evidence whatsoever regarding the "net cost of the accommodation needed," 29 C.F.R. § 1630.2(p)(2)(i); "[t]he overall financial resources of the facility" where plaintiff was employed, *id.* § 1630.2(p)(2)(ii); "the overall financial resources" or "overall size" of the SSA, *id.* § 1630.2(p)(2)(iii); "[t]he impact of the accommodation upon . . . the ability of other employees to perform their duties," *id.* § 1630.2(p)(2)(v); or "the impact on the . . . ability to conduct business" at the facility where plaintiff was employed. *Id.* Thus, defendant is not entitled to summary judgment on Count I.

### III.    Count II: Unlawful Discharge

Defendant also seeks summary judgment on Count II, in which plaintiff alleges that her termination violated the Rehabilitation Act.[5]  Although the parties have confined their arguments to whether plaintiff's termination was discriminatory (see Def.'s Opp'n at 20-22; Pl.'s Reply at 28-29), the complaint also alleges that her termination was retaliatory.  (Compl ¶ 15).  Under either theory, the Court declines to grant summary judgment for defendant when plaintiff has submitted a valid Rule 56(f) affidavit and has not yet had the opportunity to conduct any discovery.[6]  *See, e.g.*, *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) ("Rule 56(f) motions should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'"  (quoting *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992))); *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C. Cir. 1987) ("[A] reasonable opportunity to complete discovery before grappling with a summary judgment motion is the norm.").  As plaintiff explains in her 56(f) affidavit, she cannot know why she was terminated without asking, for example, how far her performance level fell below

---

[5] Although plaintiff's complaint alleges that she was "discharged or constructively discharged . . . in violation of the Rehabilitation Act" (Compl. ¶ 22), plaintiff does not argue constructive discharge in her pleadings.  Moreover, the record is clear that plaintiff was terminated by her employer, even though, as a formality, she resigned the day before her termination was set to take effect.  (*See* Def.'s Facts ¶¶ 20-21.)

[6] Defendant notes that plaintiff has already had access to some of the information that she seeks, given the EEOC action that preceded this case.  (Def.'s Reply at 16.)  The existence of a prior administrative proceeding, however, does not affect plaintiff's entitlement to discovery. *See Wiggins v. Powell,* No. 02-1774, 2005 WL 555417, at *24 (D.D.C. Mar. 7, 2005) ("While some of these witnesses have given testimony in the context of Plaintiff's EEOC complaint relating to his non-selection, the plaintiff is entitled to 'a fresh, independent determination of the "matter" at stake,' as 'the court's inquiry is not limited to or constricted by the administrative record . . . .'" (quoting *Doe v. United States,* 821 F.2d 694, 697-98 (D.C. Cir. 1987))).

GS-11 standards or whether her supervisors were annoyed by her need for accommodation.  If at the end of discovery defendant still views the evidence as insufficient to support discriminatory or retaliatory discharge, the Court will entertain a renewed motion for summary judgment on this count.  *See Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 31 n.4 (D.D.C. 2007).

## CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment on Count I will be denied with prejudice, defendant's motion for summary judgment on Count II will be denied without prejudice, and plaintiff's Rule 56(f) motion will be granted.  A separate order accompanies this Memorandum Opinion.

_____/s/_____<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Date: July 5, 2007